IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,               )
                                )
v.                              )    Civil Action No. 1:12-cv-551
                                )
JOHN E. WILLIAMS,               )
                                )
and                             )
                                )
OCCOQUAN FOREST DRIVE, LLC,     )
                                )
        Defendants.              )

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment and Defendants John E. Williams' and Occoquan Forest Drive, LLC's Motions to Dismiss. This action stems from the termination of a lease by Lieutenant Colonel John M. Thomas ("Tenant") with Defendants John Williams and Occoquan Forest Drive, LLC ("Defendants"), pursuant to the procedures set forth in the Servicemember Civil Rights Act ("SCRA"), 50 U.S.C. app. §§ 501 et seq. and the subsequent unlawful withholding of Tenant's security deposit.

On April 26, 2008, Tenant and his wife signed a four-year lease for a single-family home located at 6121 Occoquan Forest Drive, Manassas, VA 20112. Defendant Occoquan Forest Drive, LLC ("Occoquan") was named as the landlord on the lease. Defendant

1

John Williams ("Mr. Williams") was listed on the lease as the landlord's agent for all matters involving the rental of that property, including payment of rent. The terms of the lease provided for rent in the amount of $2,450.00 to be paid on the first day of each month beginning June 1, 2008. Prior to the first rent payment, Tenant provided Mr. Williams with a security deposit in the amount of $2,450.00. Tenant moved into the property on or around June 1, 2008 and made regular monthly rent payments through June 1, 2010.

Under the terms of the lease, Tenant had the right to terminate the lease if he was transferred by the United States Air Force more than thirty-five miles from the rental property. On May 12, 2010, Tenant received permanent change of station orders from the United States Air Force transferring him to Creech Air Force base in Nevada. Tenant was required to report for duty in Nevada no later than September 30, 2010. On May 13, 2010, Tenant emailed and sent a memorandum entitled, "Tenant's Notice to Vacate," by certified mail to Mr. Williams informing him that he and his wife intended to move out of the property on or before June 30, 2010. Also included in this correspondence was a copy of his permanent change of station orders.

On June 25, 2010, Tenant again emailed and sent via certified mail a new letter from his command indicating that he had an earlier report date of September 1, 2010 and was required

to depart the area for travel to his new station by August 25, 2010. On June 29, 2010, Tenant accompanied John Williams on a walk-through inspection of the premises whereby Mr. Williams subsequently certified in writing that the premises was in "excellent" condition and that there would be, "no charges against the security deposit." Tenant and his wife then moved out of the property on June 30, 2010.

In a letter dated July, 12, 2010 Mr. Williams conveyed his belief that the lease had been improperly terminated and informed tenants that they owed rent for July 2010 of $2,450.00 and a late fee of $125.00 if payment was received after July 19, 2010. Another letter from Mr. Williams dated August 28, 2010 again informed tenants that they owed more rent, this time for the month of August, in the amount of $2,450.00 and a late fee of $125.00. Also in this letter was the first allegation by Mr. Williams of damage to the property by the Tenant requiring payment of $125.00 for failing to, "clear gutters on the garage" and, "the rear guttering of the main roof and flat roof over the kitchen," $250.00 to, "repair potholes in the main drive," and $300.00 to, "service the septic system."

Meanwhile, the United States Army's Legal Assistance and Policy Division became involved on Tenant's behalf and sent a letter dated January 4, 2011 to Mr. Williams stating that under the Servicemembers Civil Relief Act ("SCRA"), he was required to

return Tenant's security deposit. Subsequently, Mr. Williams wrote more letters demanding additional fees from Tenant such as rent for September, pro-rated rent for October, late fees, and reimbursement for a myriad of repairs totaling almost $6,000.00. As a result, Defendants retained the $2,450.00 security deposit and claimed Tenant owed the difference in back rent and alleged property damage.

This action was filed by the United States on May 21, 2012 alleging Defendants had imposed an early termination charge on a lease covered by 50 U.S.C. app. § 535(b)(1), in violation of 50 U.S.C. app. § 535(e)(1) and/or knowingly seized, held, or detained the personal effects, security deposit, or other property of a servicemember or servicemember's dependent who lawfully terminated a lease covered by section 535 for the purpose of subjecting or attempting to subject any of such property to a claim for rent accruing subsequent to the date of termination of such lease, in violation of 50 U.S.C. app. § 535(h). The Complaint seeks an Order enjoining Defendants from violating the SCRA and appropriate monetary damages. Tenant is, and at all times relevant to the Complaint, an active duty member of the United States Air Force.

This Court must grant summary judgment when a party fails to make a showing sufficient to establish the existence of any essential element of the party's case on which that party has

4

the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). A movant need only show that there is an absence of evidence or support for the opposing party's case. See Celotex Corp., 477 U.S. at 325. If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment, "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

A dispute over an issue of material fact is "genuine" under Rule 56 only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. At 252.

According to 50 U.S.C. app. § 597(a) of the Servicemembers Civil Relief Act ("SCRA"), it is proper for the Attorney General to commence a civil action in an appropriate district court against "any person who...engages in a pattern or practice of violating this Act or engages in a violation of this Act that raises an issue of significant public importance." The court may grant appropriate equitable or declaratory relief with respect to violation of this Act, award all other appropriate relief including monetary damages to any person aggrieved by the violation, and may assess a civil penalty within the parameters listed. 50 U.S.C. app. § 597(b).

The SCRA allows servicemembers to terminate a residential lease, such as the one at issue here, at any time after the date of the lessee's military orders when the servicemember, while in military service, executes the lease and thereafter receives military orders for a change of permanent station for a period of not less than ninety (90) days. 50 U.S.C. app. § 535(a)-(b). Tenant has been an active duty member of the United States Air Force since May 1996, and thus he was a servicemember under the SCRA when the lease was signed on April 26, 2008.

The procedures for proper termination of a lease when a servicemember has received an order for a permanent change of station are outlined in 50 U.S.C. app. § 535(c). Termination of a lease is made by delivery by the lessee of written notice of

6

such termination, and a copy of the servicemember's military orders to the lessor or to the lessor's agent. Id. Mr. Williams is the registered agent for Occoquan. On May 13, 2010, Tenant emailed and sent via certified mail a letter entitled, "Tenant's Notice to Vacate" informing Mr. Williams of his intention to vacate the property on or before June 30, 2010 with a copy of Tenant's permanent change of station order attached. According to an addendum to that order, Tenant was required to report no later than September 1, 2010 to his next duty station and was to depart no later than August 25, 2010 in order to report on time to his next assignment. This addendum was sent to Mr. Williams on June 25, 2010.

The effective date of the lease termination under the SCRA according to 50 U.S.C. app. § 535(d) states the "...termination of the lease under subsection (a) is effective 30 days after the first date on which the next rental payment is due and payable after the date on which the notice under subsection (c) is delivered."

Additionally, termination was proper under the lease as well. Paragraph 25 of the lease states:

> A Military Tenant may terminate this Lease by serving Landlord with written Notice of termination stating the date when termination will be effective. That date shall not be less than 30 days after the date Landlord receives the Notice, or otherwise as required under the SCRA. In addition, the termination date shall not be more than 60 days prior to the date of

7

> departure necessary for Military Tenant to comply with the official orders or any supplemental instructions for interim training or duty prior to the transfer, or otherwise as required by SCRA. Military tenant shall attach to Notice of termination a copy of the orders, official notification of orders, or a signed letter from Military Tenant's commanding officer confirming the orders, or as otherwise required under the SCRA. After exercising the right to terminate this Lease, Military Tenant remains obligated to pay rent for the 30 days following the date the next rental payment is due after the date of written Notice of termination.

The "Tenant's Notice to Vacate" was dated May 13, 2010. The Tenant made clear that his last rental payment would be for the month of June and that he intended to vacate the premises on or before June 30, 2010. When the "Notice to Vacate" was sent on May 13, 2010, the next rental payment was due on June 1, 2010. Under the terms of the lease, Tenant's rent obligations were extinguished thirty days after the next rental payment; thirty days after June 1, 2010 was July 1, 2010. Therefore, July 1, 2010 was the official termination date and Tenant's rent obligations were extinguished. Therefore, Tenant only remained obligated to pay rent through June 30, 2010. The rent for June was paid by Tenant.

The termination date also complied with the lease requirements for the timing of the notice to Landlord. Tenant's must report date was August 25, 2010. The termination date was more than thirty (30) days after the date Landlord received the Notice and also less than sixty (60) days prior to the date of

departure necessary. Given these facts, Tenant properly complied with termination of the lease according to Paragraph 25 of the lease and properly paid his last rental payment for the month of June.

Defendants withheld Tenant's security deposit in the amount of $2,450.00. Defendants' withholding of the security deposit and attempts to charge Tenant additional rent following his departure because of the early termination of the lease amount to early termination charges in violation of the SCRA. 50 U.S.C. app. § 535(e)(1) provides:

> Lease of premises. Rent amounts for a lease described in subsection (b)(1) that are unpaid for the period preceding the effective date of the lease termination shall be paid on a prorated basis. The lessor may not impose an early termination charge, but any taxes, summonses, or other obligations and liabilities of the lessee in accordance with the terms of the lease, including reasonable charges to the lessee for excess wear, that are due and unpaid at the time of termination of the lease shall be paid by the lessee.

Moreover, Defendants' claims for property damage were not proper under the terms of the lease and Defendants had no basis to withhold Tenant's security deposit. On June 29, 2010, Tenant and Mr. Williams made a walk-through inspection of the premises. Upon completion of the walk-through, Mr. Williams provided Tenant with a signed note stating: "Inspected today: 6121 Occoquan Forest Drive, Manassas. There will be <u>no charges</u> against the security deposit by [Colonel] Thomas. <u>Excellent</u>

9

return of the property!" Notably, Defendants' did not claim any property damage until over two months after Tenant vacated the property and after the rent dispute developed. Defendants' property damage claims violate the express terms of the lease by failing to bring forth damage claims within thirty (30) days of termination of the tenancy. Section 17 of the lease provides that, "an itemized statement of estimated deductions to be charged against the deposit" must be provided within thirty (30) days "after termination of then tenancy and Tenant's vacating the premises." Defendants' did not provide itemized statements of the deductions until over sixty (60) days later on August 28, 2010 and February 3, 2011. Here, Defendants' withholding of the security deposit, attempts to charge Tenant additional rent, and allegations of property damage amounts to an early termination charge in violation of the SCRA. Tenant had no obligations under the lease subsequent to the termination date and as illustrated above, the claims for damage were not timely under the lease. These damages were not "due and unpaid at the time of termination of the lease." There are no genuine issues of material fact in dispute and Plaintiff's Motion for Summary Judgment should be granted.

Defendants filed motions to dismiss for failure to state a claim on which recovery may be had. However, the Complaint properly alleges a cause of action against both Occoquan and Mr.

Williams. Section 597 of the SCRA provides that the Attorney General may commence a civil action against *any person* who violates the Act. 50 U.S.C. app. § 597(a). As there is no appropriate case law directly on point, this Court looks to cases under the analogous Fair Housing Act ("FHA"). The FHA was enacted to, "prohibit discrimination in [the] housing market..." See 42 U.S.C. §§ 3601 et seq. Both the FHA and the SCRA were intended to protect against civil rights violations in the housing context. Under the FHA, property managers may be held individually liable for discriminatory acts in which they participate. See Hamad v. Woodcrest Condominium Ass'n, 328 F.3d 224, 236-37 (6th Cir. 2003). Notably, individual rental agents have been held liable under the FHA because, "[i]t is well established that agents will be liable for their own unlawful conduct, even where their actions were at the behest of the principal." See Jeanty v. McKey & Poague, Inc., 496 F.2d 1119, 1120-21 (7th Cir. 1974). Mr. Williams, as the registered agent of Occoquan, and while acting in his management capacity, refused to accept Tenant's lawful termination of the lease and imposed additional rent that was not actually due and owing. Mr. Williams also withheld the Tenant's security deposit.

Regarding Occoquan, Occoquan as a corporate entity can only act through Mr. Williams. The Complaint mentions Occoquan in the allegations contained therein by referencing the Defendants,

11

plural. The property that is subject to the lease at issue belongs to Occoquan, and Occoquan is listed as the landlord on the lease. Both Occoquan and Mr. Williams may be held liable for violations of the SCRA.

For the reasons stated herein, Plaintiff's Motion for Summary Judgment should be granted and Defendants' Motions to Dismiss should be denied. Plaintiff is entitled to the injunctive and monetary relief requested in the Complaint. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
February 14, 2013